No. 25-51004

# United States Court of Appeals for the Fifth Circuit

DEFENSE DISTRIBUTED,

*Plaintiff-Appellee*

*v.*

YOUTUBE, L.L.C.; GOOGLE, L.L.C.; ALPHABET, INCORPORATED,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Western District of Texas (No. 1:25-cv-01095-ADA)

## DEFENDANTS-APPELLANTS' OPENING BRIEF

Steven J. Wingard
Robyn Hargrove
Eli Barrish
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
(512) 495-6300

Jonathan Patchen
Michael A. Rome
Anika Holland
Madeleine R. Ahlers
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
(415) 693-2000
jpatchen@cooley.com

Connie L. Wang
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000

*Counsel for Defendants-Appellants*
*YouTube LLC, Google LLC, and Alphabet, Inc.*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record in *Defense Distributed v. YouTube, L.L.C.; Google, L.L.C.; Alphabet, Incorporated* (No. 25-51004), on appeal from the United States District Court for the Western District of Texas (No. 1:25-cv-01095-ADA), certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.      Plaintiff-Appellee is Defense Distributed.  To Defendants-Appellants' knowledge, Defense Distributed has no parent company and is not a publicly traded company.

2.      Plaintiff-Appellee is represented in the Fifth Circuit by Chad Flores of Flores Law PLLC.

3.      Defendants-Appellants are YouTube LLC, Google LLC, and Alphabet, Inc.  YouTube LLC is a subsidiary of Google LLC.  Google LLC is a subsidiary of XXVI Holdings, Inc., which is a subsidiary of Alphabet, Inc.  Alphabet, Inc. is a publicly traded company, but no publicly traded company owns 10% or more of its stock.

4.      Defendants-Appellants are represented in the Fifth Circuit by Jonathan Patchen, Michael A. Rome, Anika Holland, Madeleine R. Ahlers, and Connie L.

Wang of Cooley LLP and Steven J. Wingard, Robyn Hargrove, and Eli Barrish of

Scott Douglass & McConnico LLP.

/s/ Jonathan Patchen

Jonathan Patchen
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
(415) 693-2000
jpatchen@cooley.com

*Counsel for Defendants-Appellants
YouTube LLC, Google LLC, and
Alphabet, Inc.*

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34 and Fifth Circuit Rule 28.2.3, Defendants-Appellants respectfully request oral argument. This case presents an important question regarding the proper analysis of a motion to transfer under 28 U.S.C. § 1404(a) when the parties have agreed to a forum-selection clause. Forum-selection clauses are ubiquitous in contractual agreements across a wide range of contexts, and certainty with respect to their enforceability is critical to the stability and predictability that businesses depend on to operate effectively in the modern economy. Defendants-Appellants submit that oral argument will assist this Court in deciding the legally and practically significant question presented.

INTRODUCTION ................................................................................1

JURISDICTIONAL STATEMENT ......................................................5

    I.     District Court Jurisdiction .................................................5

    II.    Appellate Jurisdiction.......................................................5

    III.   Alternative Petition for Writ of Mandamus ......................6

STATEMENT OF THE ISSUE................................................................9

STATEMENT OF THE CASE.................................................................9

    I.     Factual Background...........................................................9

         A.     YouTube, Google Ads, and the Relevant Terms of
               Service..................................................................9

         B.     Defense Distributed Agrees to YouTube's and Google
               Ads's Terms of Service, Including Their Forum-
               Selection Clauses ................................................12

    II.    Procedural Background...................................................15

SUMMARY OF THE ARGUMENT ...................................................20

STANDARD OF REVIEW .................................................................24

ARGUMENT......................................................................................25

    I.     Forum-Selection Clauses Enjoy a Strong Presumption of
          Enforceability. ................................................................25

    II.    The District Court Committed Clear Legal Error by Holding
          That the Forum-Selection Clauses Are Unenforceable.....................28

         A.     State public policy may not be considered in the
               enforceability analysis. ..........................................31

         B.     Even if consideration of state public policy were
               permissible, that policy cannot be one of hostility to
               forum-selection clauses.........................................34

         C.     At the very least, the district court was required to weigh
               federal and state public policy, and federal public policy
               prevails here. ..........................................................38

# TABLE OF CONTENTS
(continued)

**Page**

III.     This is Not the Exceptional Case In Which the Public-Interest Factors Can Overcome an Otherwise Enforceable Forum-Selection Clause. ...............................................................44

CONCLUSION .......................................................................................51

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alaniz v. Liberty Life Assurance Co. of Boston*,
No. 1:18-cv-297, 2018 WL 11428242 (E.D. Tex. Oct. 4, 2018) ......................48

*Albemarle Corp. v. AstraZeneca UK Ltd.*,
628 F.3d 643 (4th Cir. 2010) ................................................ 22, 37-38

*Ameri-Fab, LLC v. Vanguard Energy Partners, LLC*,
646 F. Supp. 3d 795 (W.D. Tex. 2022) ............................................36

*Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct.*,
571 U.S. 49 (2013).......................................................................*passim*

*Barnett v. DynCorp Int'l, LLC*,
831 F.3d 296 (5th Cir. 2016) .................................................. 44-45

*Barton v. Young*,
144 F. Supp. 2d 685 (E.D. Tex. 2001).............................................48

*In re Bradford*,
660 F.3d 226 (5th Cir. 2011) ...........................................................6

*In re Chamber of Com. of U.S.*,
105 F.4th 297 (5th Cir. 2024) ........................................................50

*Cheney v. U.S. Dist. Ct.*,
542 U.S. 367 (2004)..................................................................8, 24

*Cohen v. Beneficial Indus. Loan Corp.*,
337 U.S. 541 (1949).........................................................................5

*Davis v. Meta Platforms, Inc.*,
No. 4:22-cv-01001, 2023 WL 4670491 (E.D. Tex. July 20, 2023) ............ 47-49

*Defense Distributed v. Bruck*,
30 F.4th 414 (5th Cir. 2022) .........................................7-8, 24, 47-48

*In re Fort Worth Chamber of Com.*,
100 F.4th 528 (5th Cir. 2024) .......................................................20

vi

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Great Lakes Ins. SE v. Raiders Retreat Realty Co.*,
   601 U.S. 65 (2024).......................................................................*passim*

*Griggs v. Provident Consumer Disc. Co.*,
   459 U.S. 56 (1982)..................................................................................20

*Haynsworth v. The Corporation*,
   121 F.3d 956 (5th Cir. 1997) .....................................................*passim*

*Hoffman v. Blaski*,
   363 U.S. 335 (1960)................................................................................27

*Huffman v. Activision Publ'g, Inc.*,
   No. 2:19-cv-00050, 2019 WL 12498087 (E.D. Tex. Nov. 27, 2019) ...............48

*Lim v. Offshore Specialty Fabricators, Inc.*,
   404 F.3d 898 (5th Cir. 2005) .......................................4, 22-23, 41-43

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972)...........................................................................*passim*

*Matthews v. Tidewater, Inc.*,
   108 F.4th 361 (5th Cir. 2024) ...................................................*passim*

*Moody v. NetChoice, LLC*,
   603 U.S. 707 (2024)................................................................................49

*Noble House, LLC v. Certain Underwriters at Lloyd's, London*,
   67 F.4th 243 (5th Cir. 2023) ........................................................23, 43

*PCL Civ. Constructors, Inc. v. Arch Ins. Co.*,
   979 F.3d 1070 (5th Cir. 2020) ....................................................17, 25

*In re Sepulvado*,
   707 F.3d 550 (5th Cir. 2013) ..................................................................6

*Stewart Org., Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988)........................................................................*passim*

*In re TikTok, Inc.*,
   85 F.4th 352 (5th Cir. 2023) ...............................................6-7, 46-47

vii

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) (en banc) ...................................................6, 24, 46

*Weber v. PACT XPP Techs., AG*,
811 F.3d 758 (5th Cir. 2016) ......................................................................*passim*

**Statutes**

28 U.S.C.
§ 1292(b)...........................................................................................................6
§ 1332............................................................................................................5, 16
§ 1404(a) .....................................................................................................*passim*
§ 1441...............................................................................................................16

Act of June 25, 1948, ch. 646, 62 Stat. 937 .........................................................27

Federal Courts Jurisdiction and Venue Clarification Act of 2011,
Pub. L. No. 112-63, § 202, 125 Stat. 764 ........................................................27

Texas Civil Practice and Remedies Code
Chapter 143A..............................................................................................*passim*
§ 143A.002....................................................................................................15
§ 143A.003 ............................................................................................... 18-19
§ 143A.0035 ............................................................................................. 18-19

**Other Authorities**

U.S. Const. amend. I .........................................................................................*passim*

15 Wright & Miller's Federal Practice and Procedure §§ 3841, 3845
(4th ed. Sept. 2025 update) ......................................................................... 27-28

Defense Distributed, https://perma.cc/NG5S-QV9A ...........................................13

Judges, United States District Court Northern District of California,
https://perma.cc/2AME-8XEX ........................................................................50

## **INTRODUCTION**

Plaintiff Defense Distributed uses YouTube and Google Ads to post videos and ads about its products. In doing so, Defense Distributed has repeatedly agreed to abide by YouTube's and Google Ads's Terms of Service, which contain forum-selection clauses requiring that any disputes arising from use of those platforms be litigated exclusively in the courts of Santa Clara County, California. Nonetheless, Defense Distributed sued YouTube, Google, and their parent company, Alphabet (collectively, "Defendants") in Texas state court. Defense Distributed alleged that Defendants "censored" its content by removing videos and ads that violate YouTube's and Google Ads's content policies. After removing the case to federal court, Defendants moved to transfer the case to the Northern District of California, which is located within Santa Clara County, under 28 U.S.C. § 1404(a). Section 1404(a) states that "a district court may transfer any civil action to any other district or division . . . *to which all parties have consented*." *Id.* (emphasis added). The rationale for the motion was straightforward: By agreeing to be bound by the forum-selection clauses in YouTube's and Google Ads's Terms of Service, Defense Distributed consented to litigate exclusively in California—therefore, the case should be transferred to California.

Defense Distributed did not contest that the forum-selection clauses at issue are mandatory or that its lawsuit falls squarely within their scope. Nor could it

credibly contest that federal law governs the analysis of whether a forum-selection clause is enforceable, and that the Supreme Court has long held that, pursuant to a federal presumption of enforceability, such clauses should be given effect in all but the most exceptional circumstances. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 915 (1972) ("*The Bremen*"); *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct.*, 571 U.S. 49, 59-60 (2013); *see also Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997); *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 773 (5th Cir. 2016). That presumption is well-justified: Enforcing freely-agreed-to forum-selection clauses, even in the face of state laws that purport to void them, promotes predictability as to where litigation will occur and vindicates the contracting parties' expectations. As the Supreme Court explained in *The Bremen*, giving effect to forum-selection clauses "accords with ancient concepts of freedom of contract" and is critical to the "expansion of American business and industry." 407 U.S. at 9, 11; *see also Atl. Marine*, 571 U.S. at 66 ("When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations.").

Despite finding that the YouTube and Google Ads forum-selection clauses are mandatory and govern the dispute at issue, and despite the substantial body of Supreme Court and Fifth Circuit precedent making clear that forum-selection clauses are to be enforced in nearly every case, the district court denied Defendants' motion

to transfer. The court held that the YouTube and Google Ads forum-selection clauses are unenforceable because Texas has announced that it has a strong public policy against enforcement of such clauses. The district court's decision was wrong for three reasons, each of which independently warrants reversal.

*First*, in determining under federal law whether a forum-selection clause is unenforceable on grounds of public policy, the district court was not permitted to consider *state* public policy to begin with. *See Great Lakes Ins. SE v. Raiders Retreat Realty Co.*, 601 U.S. 65, 78 (2024). Only federal public policy or that of a foreign nation, if relevant, may be considered. *See id.* The Supreme Court has explained that "[a] federal presumption of enforceability would not be much of a presumption if it could be routinely swept aside based on 50 States' public policy determinations." *Id.* at 77. The district court's ruling produces exactly such an outcome: It improperly sweeps away the long-settled federal public policy in favor of forum-selection clauses based on Texas's state-specific public policy.

*Second*, even if the district court could consider state public policy in the enforceability analysis, it contravened Supreme Court precedent by allowing a state public policy *against forum-selection clauses* to override the federal presumption in favor of such clauses. *See The Bremen*, 407 U.S. at 9-15; *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30, 31 n.10 (1988) (holding that a district court erred by brushing aside a forum-selection clause based on a state law declaring such clauses to be

void).  After all, the federal presumption of enforceability would be even less of a presumption if a State could effectively nullify it simply by declaring that it has a strong public policy against forum-selection clauses.

*Third*, even assuming that the district court was permitted to consider Texas's public policy of hostility toward forum-selection clauses, it was required to weigh that public policy against the strong *federal* public policy in favor of forum-selection clauses.  Under the proper analysis, federal public policy would have easily prevailed, as demonstrated by Fifth Circuit precedent.  *See Matthews v. Tidewater, Inc.*, 108 F.4th 361, 369-70 (5th Cir. 2024); *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 905-06 (5th Cir. 2005).

Absent these legal errors, the forum-selection clauses at issue are plainly enforceable.  And because the case implicates speech on national platforms and First Amendment issues of national importance that the Northern District of California is just as well-equipped to adjudicate as the Western District of Texas, there is no overwhelming public interest against transfer that could overcome the otherwise enforceable forum-selection clauses.

In short, the district court committed clear legal error thrice over. Accordingly, this Court should reverse the district court's order denying Defendants' motion to transfer under section 1404(a).  In the alternative, this Court should treat

this filing as a petition for mandamus and order the district court to transfer the case to the Northern District of California.

## JURISDICTIONAL STATEMENT

### I. District Court Jurisdiction

The district court has diversity jurisdiction under 28 U.S.C. § 1332 because diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000. *See* ROA.27 ¶ 14 (alleging that the "amount in controversy exceeds $5 million, excluding interest, statutory damages, exemplary damages, penalties, attorney's fees, and court costs"); ROA.28 ¶ 21, ROA.30 ¶¶ 30-32 (alleging that Defense Distributed is a citizen of Texas and all three Defendants are citizens of Delaware and California for diversity purposes).

### II. Appellate Jurisdiction

Defendants filed a timely notice of appeal on December 1, 2025. ROA.654. Defendants seek review of the district court's order denying Defendants' motion to transfer, dated November 13, 2025. *See* ROA.546-553. That order is appealable by virtue of the collateral-order doctrine because (1) this appeal will conclusively determine the correctness of the district court's transfer decision, (2) the transfer decision is separate from the action's merits, and (3) the transfer decision is otherwise effectively unreviewable. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). There can be no real dispute that the first two requirements

of the collateral-order doctrine are satisfied.  And as to the third, in *In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc), this Court concluded that "an appeal from an adverse final judgment" would not provide "an adequate remedy for an improper failure to transfer [a] case," and that "interlocutory review of transfer orders under 28 U.S.C. § 1292(b) is unavailable."  545 F.3d at 318-19 (citation omitted).

Accordingly, in *In re Bradford*, 660 F.3d 226 (5th Cir. 2011), this Court held that it had jurisdiction to consider an appeal from a district court's transfer order under the collateral-order doctrine.  *Id.* at 229.  The Court reaffirmed that holding in *In re Sepulvado*, 707 F.3d 550, 552 (5th Cir. 2013).  Under those precedents, this Court has appellate jurisdiction over the district court's order denying Defendants' motion to transfer.  Indeed, Defense Distributed itself indicated to the district court that had the court granted the motion to transfer, it would have "pursue[d] appellate review" in this Court.  ROA.412.

## III.  Alternative Petition for Writ of Mandamus

If this Court determines that it lacks appellate jurisdiction, Defendants request that the Court treat this filing as a petition for a writ of mandamus.  In *Volkswagen*, this Court stated that "[t]here can be no doubt . . . that mandamus is an appropriate means of testing a district court's § 1404(a) ruling."  545 F.3d at 309; *see also In re TikTok, Inc.*, 85 F.4th 352, 356 (5th Cir. 2023) (granting petition for writ of

mandamus seeking transfer from Western District of Texas to Northern District of California).

In *Defense Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022), Defense Distributed itself both appealed from an adverse decision on its transfer motion and, in the alternative, asked this Court to construe its filing as a petition for a writ of mandamus. *See* Brief of Appellants at 16-17, *Defense Distributed v. Bruck*, No. 21-50327 (5th Cir. June 17, 2021), Dkt. No. 37; *see also* Reply Brief of Appellants at 8-16, *Bruck* (5th Cir. July 28, 2021), Dkt. No. 55. In resolving Defense Distributed's appeal, this Court flagged a potential intra-circuit split on whether the collateral-order doctrine applies to transfer orders. *Bruck*, 30 F.4th at 423 n.8. Rather than weigh in on that potential split, this Court "pretermit[ted] Defense Distributed's resort to the collateral order doctrine" and treated its appeal as a petition for a writ of mandamus. *Id.* at 423. The Court explained that it had no need to resolve whether the collateral-order doctrine applies to transfer orders because, "in this circuit, mandamus is the prescribed vehicle for reviewing rulings on transfers of cases pursuant to 28 U.S.C. § 1404(a)." *Id.*

In recognition of the lingering uncertainty as to the proper mechanism for seeking review of an adverse transfer decision in this Circuit, Defendants have followed the same course as Defense Distributed in its earlier litigation by both appealing and alternatively petitioning for a writ of mandamus. While this Court in

*Bruck* ultimately selected the mandamus route, Defendants would risk losing the opportunity to obtain this Court's review of the district court's transfer decision by filing only a mandamus petition. That is because one of the fundamental prerequisites to mandamus relief is that "the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires—a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process." *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380-81 (2004) (internal quotation marks and citation omitted). If this Court were to conclude that its precedents holding that transfer orders fall within the scope of the collateral-order doctrine are correct, then Defendants would have "other adequate means" to obtain relief—namely, an appeal—and mandamus relief would likely be foreclosed. *Id.*

\* \* \*

In short, this Court has jurisdictional authority to correct the district court's erroneous decision by either (a) reversing the district court's order denying Defendants' transfer motion as an exercise of the Court's appellate jurisdiction or (b) issuing a writ of mandamus directing the district court to transfer the case as an exercise of the Court's original jurisdiction.

## STATEMENT OF THE ISSUE

Whether the district court committed legal error by denying Defendants' motion to transfer despite Defense Distributed's agreement to mandatory, applicable, and enforceable forum-selection clauses.

## STATEMENT OF THE CASE

### I.     Factual Background

#### A.     YouTube, Google Ads, and the Relevant Terms of Service

Defendant YouTube LLC makes YouTube—an online video service that allows users to create channels and upload videos—available to the public.  ROA.30 ¶¶ 27, 29; ROA.272 ¶ 2.  Defendant Google LLC provides the YouTube service.  ROA.280.  Google LLC also provides Google Ads, which is a digital advertising service that allows businesses, organizations, and individuals to display ads on YouTube and other Google websites or apps.  ROA.30 ¶¶ 28-29.  Defendant Alphabet, Inc. is the parent company of both YouTube LLC and Google LLC.  ROA.30-31 ¶ 33.  All three Defendants are incorporated in Delaware and headquartered in California.  ROA.30 ¶¶ 30-32.

In order to view and upload videos on YouTube, users must agree to abide by the YouTube Terms of Service, which govern the relationship between YouTube and its users and also expressly incorporate YouTube's Community Guidelines.  ROA.272-73 ¶ 3; ROA.275 ¶ 9. The Guidelines prohibit content that may be

harmful, offensive, or unlawful in order to promote a safe and thriving platform. ROA.272 ¶ 2. YouTube's Terms specify that users "must not submit to the Service," *i.e.*, upload to YouTube, "any Content that does not comply with this Agreement (including the YouTube Community Guidelines)." ROA.275 ¶ 9. And the Terms state that YouTube reserves the "right to remove or take down some or all of such Content in [its] discretion." *Id.*

YouTube's Community Guidelines incorporate its firearms policy, which states that "[c]ontent intended to sell firearms, instruct viewers on how to make firearms, ammunition, and certain accessories, or instruct viewers on how to install those accessories is not allowed on YouTube." ROA.33-34 ¶¶ 39, 40. It further states that "YouTube shouldn't be used as a platform to sell firearms or [firearm] accessories." ROA.34 ¶ 40. The policy provides specific, non-exhaustive examples of content that would violate the policy, such as "[l]inks in the title or description of your video to sites where firearms or [firearm] accessories . . . are sold" and "[d]isplaying a firearm with the intention to sell that firearm via public sale." ROA.36 ¶ 40. YouTube explicitly informs users that if their content violates the firearms policy, it will "remove the content and send you an email to let you know." *Id.*

YouTube's Terms of Service also contain a forum-selection clause, which requires that disputes between YouTube and its users arising out of or relating to the

Terms or use of the YouTube service be litigated exclusively before a court in Santa Clara County, California. ROA.273-74 ¶ 5. Specifically, the current version of the "Governing Law" provision, which has been in effect since December 2019, states:

> All claims arising out of or relating to these terms or the Service will be governed by California law, except California's conflict of laws rules, and *will be litigated exclusively in the federal or state courts of Santa Clara County, California, USA*. You and YouTube consent to personal jurisdiction in those courts.

ROA.273-74 ¶¶ 5, 6 (emphasis added). The "Service" is defined as "the YouTube platform and the products, services, and features we make available to [the users] as part of the platform." ROA.274 ¶ 5. And previous versions of the Terms in effect since Defense Distributed created its YouTube channel in January 2012 included similar language requiring disputes to be litigated exclusively in Santa Clara County. ROA.274 ¶ 6.

YouTube makes clear to its users that they agree to the Terms of Service by using the YouTube platform. ROA.272-73 ¶ 3; *see* ROA.280 ("Please read this Agreement carefully and make sure you understand it. If you do not understand the Agreement, or do not accept any part of it, then you may not use the Service."). In addition, a user necessarily accepts and agrees to YouTube's Terms of Service every time he or she uploads a video to the platform. ROA.274 ¶ 7. In order to upload videos to YouTube, a user must first create a "channel" on YouTube. ROA.273 ¶ 4. Then, when a user attempts to upload a video to his or her channel, YouTube presents

the user with a notice that states: "By submitting your videos to YouTube, you acknowledge that you agree to YouTube's Terms of Service and Community Guidelines," with hyperlinks to the Terms and Guidelines. ROA.274 ¶ 7. A user cannot upload a video without viewing this screen and affirmatively choosing to proceed after viewing it. *Id.*

Google Ads also has Terms of Service governing the relationship between the platform and its users. *See* ROA.300-06. Users must click a button indicating that they agree to be bound by the Google Ads Terms before they can begin posting ads using the service. ROA.296 ¶ 2. The Google Ads Terms incorporate a policy, akin to YouTube's firearms policy, that prohibits ads for firearms. ROA.50 ¶ 59. And like the YouTube Terms, the Google Ads Terms contain a forum-selection clause stating: "ALL CLAIMS ARISING OUT OF OR RELATING TO THESE TERMS OR THE PROGRAMS WILL BE LITIGATED EXCLUSIVELY IN THE FEDERAL OR STATE COURTS OF SANTA CLARA COUNTY, CALIFORNIA," with "PROGRAMS" defined to encompass all of Google's advertising programs and services. ROA.297 ¶ 5.

### B. Defense Distributed Agrees to YouTube's and Google Ads's Terms of Service, Including Their Forum-Selection Clauses

Defense Distributed markets itself as a "private defense contractor" based in Texas that purportedly "define[s] the state of the art in small scale, digital, personal gunsmithing technology." ROA.28 ¶¶ 21-22. In plain terms, Defense Distributed is

a manufacturer and advocate of "ghost guns," which are untraceable firearms that individuals can create at home using 3-D printers. *See* Defense Distributed, https://perma.cc/NG5S-QV9A (Defense Distributed's homepage, which contains prominent links for "GHOST GUNNER" and "GHOST GUNS").

Defense Distributed alleges that it "regularly publishes videos th[r]ough YouTube and utilizes the Google Ads platform" and "has posted, uploaded, transmitted, shared, and otherwise published expression . . . through YouTube and the Google Ads platform from at least 2013 to present." ROA.28 ¶ 22; ROA.29 ¶ 25.

Defense Distributed created a YouTube channel entitled "DXLiberty" in January 2012, and it has "continually uploaded videos to its DXLiberty YouTube channel between February 13, 2012 and June 9, 2025." ROA.273 ¶¶ 4-5. Every time Defense Distributed uploaded a video to DXLiberty, it necessarily was informed of and agreed to be bound by YouTube's Terms of Service, including the forum-selection clause and incorporated Community Guidelines. ROA.274-75 ¶ 8. Since YouTube last updated its Terms of Service on December 15, 2023, Defense Distributed has uploaded four videos, including one entitled "G80 | Next-Gen Fixtures," which was uploaded on April 30, 2024. *Id.*[1] According to Defense

---

[1] The updated version of the Terms of Service contains the same forum-selection clause language quoted above, which has been in effect since December 2019. *See* ROA.273-74 ¶ 5.

Distributed, the "G80 | Next-Gen Fixtures" video displayed various components of an unfinished firearm and the tools required to finish the firearm, including the "G80 Jig Set," "G80 Unfinished Receiver," and "G80 Grip Module." ROA.39-45 ¶ 47. Defense Distributed alleges that YouTube took down the "G80 | Next-Gen Fixtures" video on May 2, 2025, and notified Defense Distributed that the video was "removed for violating YouTube's Community Guidelines." ROA.46 ¶¶ 48-49. Defense Distributed also alleges that YouTube stopped hosting its video entitled "Inside The Battle To Arm America," which it claims to have uploaded in 2013. ROA.46 ¶ 51; ROA.49 ¶ 56. Defense Distributed does not dispute, nor could it, that at the time it uploaded each of these videos, it received the disclosures referenced above that it was agreeing to the then-current YouTube Terms of Service, including the forum-selection clause. ROA.548-49; ROA.274-75 ¶ 8.

Defense Distributed created a Google Ads account on October 25, 2022, and accepted the Google Ads Terms of Service, including the firearms policy and forum-selection clause contained in the Terms, on November 14, 2022. ROA.297 ¶ 4. Defense Distributed alleges that it has repeatedly sought to publish ads for firearms through the Google Ads platform but has been prevented from doing so. ROA.50 ¶ 59. For example, Defense Distributed cites an ad it tried to post through Google Ads for "80% AR-15[s]" and "80% AR-15 Receivers" through

"www.ghostguns.com," which was disapproved of under Google Ads's firearms policy. *Id.*

## II.  Procedural Background

In June 2025, Defense Distributed "flout[ed] its contractual obligation" to resolve all disputes concerning its use of YouTube and Google Ads in the courts of Santa Clara County, California by suing Defendants in Texas state court. *Atl. Marine*, 571 U.S. at 64; ROA.21.  Defense Distributed alleged that Defendants had "censored" its "pro-gun" videos and ads in violation of Texas House Bill 20, codified as Texas Civil Practice and Remedies Code Chapter 143A.  ROA.25 ¶ 8; ROA.26 ¶¶ 10, 12.  Chapter 143A prohibits "social media platform[s]" from "censor[ing] a user [or] a user's expression" based on the "viewpoint of the user" or "the viewpoint represented in the user's expression."  Tex. Civ. Prac. & Rem. Code § 143A.002.

Defense Distributed alleged three causes of action, asserting that Defendants violated Chapter 143A by "censoring" Defense Distributed's publications on the YouTube and Google Ads platforms because of (1) "the viewpoints expressed in" the publications, (2) "the viewpoints expressed by Defense Distributed at large," and (3) "the viewpoints expressed by Defense Distributed's audience."  ROA.54 ¶ 70; ROA.55 ¶ 76; ROA.57 ¶ 82.  Defense Distributed sought an injunction requiring Defendants to stop removing its videos and ads, a declaration that Defendants had violated Chapter 143A, and costs and attorney's fees.  ROA.58-60 ¶¶ 89-91.

Defense Distributed claimed that its videos and ads are "protected by the First Amendment" of the United States Constitution, and that Defendants' actions have caused "irreparable harm to [its] First Amendment" liberties. ROA.38 ¶ 44; ROA.51 ¶¶ 60-61. And it alleged that the "amount in controversy exceeds $5 million, excluding interest, statutory damages, exemplary damages, penalties, attorney's fees, and court costs." ROA.27 ¶ 14.

As a matter between completely diverse parties with an amount in controversy in excess of $75,000, Defense Distributed's case is subject to federal jurisdiction. *See* 28 U.S.C. § 1332. Therefore, upon being served with Defense Distributed's petition, Defendants timely removed the case to federal court under 28 U.S.C. § 1441. *See* ROA.12-17. Shortly thereafter, Defendants filed a motion to transfer the case from the Western District of Texas to the Northern District of California under 28 U.S.C. § 1404(a). *See* ROA.247-71; *see also Atl. Marine*, 571 U.S. at 52 ("[A] forum-selection clause may be enforced by a motion to transfer under § 1404(a)."). Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Defendants' motion was premised on the forum-selection clauses in YouTube's and Google Ads's Terms of Service, through which Defense Distributed consented to litigating

any claims "arising out of or relating to" the YouTube or Google Ads platforms "exclusively in the federal or state courts of Santa Clara County, California." ROA.292; ROA.305.

The district court denied Defendants' motion to transfer. The district court acknowledged that "forum-selection clauses should be given 'controlling weight in all but the most exceptional cases.'" ROA.548 (quoting *Atl. Marine*, 571 U.S. at 63). The court also noted that Defense Distributed "does not dispute that its claims fall within the scope of the forum-selection clauses or that the clauses are mandatory." ROA.548-49 (citing ROA.400). The court further recognized that "[f]ederal law applies to determine the enforceability of forum selection clauses in diversity cases," ROA.549 (quoting *PCL Civ. Constructors, Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1074 (5th Cir. 2020)), and that "[u]nder federal law, there is a 'strong presumption' in favor of enforcing mandatory forum-selection clauses," ROA.549 (quoting *Weber*, 811 F.3d at 773).

Nevertheless, the district court declined to enforce the concededly mandatory, applicable, and presumptively enforceable forum-selection clauses. The court concluded that Defense Distributed had overcome the strong presumption in favor of enforceability by showing that the clauses are "unreasonable" because "enforcing them would contravene the strong public policy of Texas." ROA.553. The Court

relied on two provisions of Chapter 143A to support its conclusion. The first, an anti-forum-selection clause provision entitled "Venue and Choice of Law," states:

> Notwithstanding any other law, any contract, or any venue, forum selection, or choice-of-law provision in a contract, an action brought under this chapter against a social media platform shall be brought and maintained in a court in this state, and the law of this state applies to the action.

Tex. Civ. Prac. & Rem. Code § 143A.0035. The second, a provision entitled "Waiver Prohibited" that purports to void forum-selection clauses, states:

> (a) A waiver or purported waiver of the protections provided by this chapter is void as unlawful and against public policy, and a court or arbitrator may not enforce or give effect to the waiver, including in an action brought under Section 143A.007, notwithstanding any contract or choice-of-law provision in a contract.
>
> (b) The waiver prohibition described by Subsection (a) is a public-policy limitation on contractual and other waivers of the highest importance and interest to this state, and this state is exercising and enforcing this limitation to the full extent permitted by the United States Constitution and Texas Constitution.

Id. § 143A.003.

Based on those two provisions, the district court determined that if it "transferred this case to California pursuant to the forum-selection clauses, it would contravene Texas's policy that actions under Chapter 143A are to be 'maintained' in this state notwithstanding any 'forum selection' provision in a contract," as well as "Texas's policy that waivers of Chapter 143A's protections—including the protection provided by the venue provision—are void and unenforceable."

ROA.550-51 (quoting Tex. Civ. Prac. & Rem. Code § 143A.0035) (citing Tex. Civ. Prac. & Rem. Code § 143A.003). The court characterized Texas's public policy as reflected in the anti-forum-selection clause and anti-waiver provisions as "undoubtedly strong," stating that "Texas made clear that it wants Chapter 143A actions litigated within its borders and that it does not tolerate contracts that waive the chapter's protections." ROA.551.

The district court rejected Defendants' argument that "state laws purporting to invalidate forum-selection clauses are irrelevant" to the section 1404(a) transfer analysis in diversity cases. ROA.551 (citing ROA.517). The court reasoned that Texas's anti-forum-selection clause law is "relevant to the threshold enforceability determination," because forum-selection clauses that "would contravene a strong public policy of the forum state" are unenforceable, interpreting "the forum state" to refer to Texas. ROA.551-52 (quoting *Weber*, 811 F.3d at 773). The court likewise dismissed Defendants' reliance on a series of Supreme Court cases directing courts to apply the federal presumption in favor of enforcing forum-selection clauses when analyzing a transfer motion, even in the face of state laws declaring such clauses void or otherwise disfavoring them. ROA.552. The district court claimed that it was following those Supreme Court cases and applying federal law, but that federal law permits it to consider state anti-forum-selection clause policies and laws in the enforceability analysis. ROA.552-53.

Having concluded that the forum-selection clauses at issue are unenforceable, the district court did not reach the question of whether the traditional public-interest factors relevant to transfer motions could overcome otherwise enforceable forum-selection clauses. *See* ROA.553 n.5.[2]

## SUMMARY OF THE ARGUMENT

It is beyond dispute in this Circuit that federal law governs whether a forum-selection clause is enforceable. *Haynsworth*, 121 F.3d at 962. And the Supreme Court has confirmed time and time again that, under federal law, forum-selection clauses enjoy a strong, nearly insurmountable presumption of enforceability. *The Bremen*, 407 U.S. at 9-15; *Atl. Marine*, 571 U.S. at 59-60; *Great Lakes*, 601 U.S. at 71.

Here, Defense Distributed repeatedly agreed to abide by forum-selection clauses in YouTube's and Google Ads's Terms of Service that the district court correctly concluded are mandatory and encompass Defense Distributed's lawsuit. Nonetheless, the district court denied Defendants' motion to transfer based on the faulty conclusion that federal law's presumption of enforceability is overcome by

---

[2] Defense Distributed filed a motion to remand the case to state court. *See* ROA.232-46. The district court "exercise[d] its discretion to resolve the motion to transfer before the motion to remand." ROA.547 n.2 (citing *KeyCity Cap., LLC v. Davenport Invs., LLC*, No. 3:21-cv-2046-D, 2022 WL 581146, at *2 (N.D. Tex. Feb. 25, 2022)). Defense Distributed's motion to remand therefore remains pending before the district court, but the district court is precluded from acting on that motion until this appeal is resolved. *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 68 (1982); *In re Fort Worth Chamber of Com.*, 100 F.4th 528, 536-37 (5th Cir. 2024).

Texas's strong public policy as reflected in Chapter 143A's anti-forum-selection clause and anti-waiver provisions. The district court's decision was infected by clear legal error in three ways.

*First*, the district court erred by considering Texas public policy at all in determining whether the forum-selection clauses are enforceable. It relied on an exception originating in the Supreme Court's decision in *The Bremen* for when enforcement of a forum-selection clause "would contravene a strong public policy of the forum state." *Haynsworth*, 121 F.3d at 963. But the Supreme Court has made clear that the "public policy of the forum state" referenced in that exception means only federal public policy or that of a foreign country, *not* that of an individual State. *Great Lakes*, 601 U.S. at 78. The Court explained that permitting state public policy to override the federal presumption of enforceability would undercut the presumption and would be a backdoor way of using state law, rather than federal law, to determine enforceability. *Id.* at 77-78.

*Second*, even if the district court could consider Texas public policy in the enforceability analysis, it erred by relying on Texas's public policy *against forum-selection clauses* in particular. In *The Bremen*, the Supreme Court forcefully rejected the "parochial" tendency for state courts to decline to enforce forum-selection clauses as contrary to public policy and established the strong presumption in favor of enforcing such clauses under federal law. 407 U.S. at 9-10. And in

*Stewart*, the Court held that because federal law is supreme, a district court may not refuse to enforce a forum-selection clause on the basis that state law disfavors such clauses and deems them to be invalid. *See* 487 U.S. at 29-32 & n.10. If a district court could claim to be applying federal law but nonetheless hold a forum-selection clause to be unenforceable based on state public policy manifesting hostility toward such clauses, that would create an obvious end-run around the Supreme Court's decisions in *The Bremen* and *Stewart*. This Court should reject that perverse result, as the Fourth Circuit did under similar circumstances. *See Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 652 (4th Cir. 2010).

*Third*, even assuming the district court was permitted to consider Texas's public policy against forum-selection clauses, it was at the very least required to weigh that state public policy against federal public policy on forum-selection clauses. It failed to do so. Had the district court conducted such a weighing, the federal public policy strongly favoring enforcement of forum-selection clauses would have easily prevailed, as it did in several of this Court's previous decisions. *See Matthews*, 108 F.4th at 370 (holding that "[e]ven if Louisiana's public policy is relevant under a *Bremen* analysis," it could "not overcome" the federal presumption of enforceability); *Lim*, 404 F.3d at 901, 905-06 (holding that "the strong federal policy in favor of . . . arbitration agreements," a type of forum-selection clause,

outweighed Louisiana's "strong public policy against a forum selection clause in an employment contract").

Under the proper enforceability analysis, there can be only one conclusion: The YouTube and Google Ads forum-selection clauses are enforceable. And when a district court is confronted with a motion to transfer under section 1404(a) premised on an enforceable forum-selection clause, the court "should transfer the case" in all but the most "extraordinary circumstances." *Atl. Marine*, 571 U.S. at 52. Unlike in a normal transfer analysis, the plaintiff's choice of forum warrants no deference, and the private-interest factors concerning the convenience of the parties necessarily support litigation in the forum selected in advance by the parties. *See id.* at 63-64. The plaintiff therefore bears a heavy "burden of showing that public-interest factors *overwhelmingly* disfavor a transfer." *Id.* at 67 (emphasis added). Defense Distributed cannot shoulder that burden here. The Northern District of California is just as well-equipped as the Western District of Texas to handle this case, which turns on fundamental First Amendment issues of national importance. Therefore, none of the public-interest factors weigh against transfer to the parties' preselected forum, let alone weigh so heavily against transfer to render this one of the "rare cases" in which an enforceable forum-selection clause may be disregarded. *Noble House, LLC v. Certain Underwriters at Lloyd's, London*, 67 F.4th 243, 249 (5th Cir. 2023) (quoting *Weber*, 811 F.3d at 776).

For those reasons, this Court should reverse the district court's order denying Defendants' motion to transfer. Alternatively, this Court should grant mandamus relief and order the district court to transfer the case to the Northern District of California.

## STANDARD OF REVIEW

The enforceability of a forum-selection clause is a question of law. *See Haynsworth*, 121 F.3d at 961. Therefore, this Court reviews a district court's interpretation of a forum-selection clause and its assessment of that clause's enforceability *de novo*. *See Matthews*, 108 F.4th at 366.

If this Court construes this filing as a petition for mandamus, then mandamus relief is warranted if there has been a "clear abuse of discretion." *Cheney*, 542 U.S. at 380 (citation omitted). "A district court by definition abuses its discretion when it makes an error of law." *Bruck*, 30 F.4th at 427 (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)); *see also Volkswagen*, 545 F.3d at 310-11 (a district court commits a "clear abuse of discretion" when it "relies on erroneous conclusions of law"). Therefore, if the district court committed legal error in its analysis of the forum-selection clauses' enforceability, then it necessarily abused its discretion.

# **ARGUMENT**

## I.     **Forum-Selection Clauses Enjoy a Strong Presumption of Enforceability.**

It is well-established in this Circuit that, in cases like this one premised on diversity jurisdiction, federal law governs the enforceability of a forum-selection clause. *See Haynsworth*, 121 F.3d at 962; *PCL Civ. Constructors*, 979 F.3d at 1074. And under federal law, forum-selection clauses enjoy a strong presumption of enforceability. *See The Bremen*, 407 U.S. at 9-15; *see also Weber*, 811 F.3d at 773 (affirming that "[t]his [C]ourt, in keeping with Supreme Court precedents, applies a strong presumption in favor of the enforcement of mandatory [forum-selection clauses]").

In *The Bremen*, one of the Supreme Court's seminal cases on the enforceability of forum-selection clauses, the Court observed that such clauses "have historically not been favored by American courts" and that "[m]any courts" had "declined to enforce such clauses on the ground that they were 'contrary to public policy,' or that their effect was to 'oust the jurisdiction' of the court." 407 U.S. at 9. The Court repudiated that "parochial" view, holding that forum-selection clauses are "prima facie valid and should be enforced" so as to "give effect to the legitimate expectations of the parties, manifested in their freely negotiated agreement." *Id.* at 9-10, 12.

The Court explained that permitting contracting parties to reduce uncertainty by agreeing on a dispute-resolution forum in advance is critical to "[t]he expansion of American business and industry." 407 U.S. at 9; *see id.* 13-14. "[F]orum-selection clauses respect 'ancient concepts of freedom of contract.'" *Great Lakes*, 601 U.S. at 71-72 (quoting *The Bremen*, 407 U.S. at 11). And they "have 'the salutary effect of dispelling any confusion' on the manner for resolving future disputes, thereby slashing the 'time and expense of pretrial motions.'" *Great Lakes*, 601 U.S. at 72 (quoting *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94 (1991)); *see Atl. Marine*, 571 U.S. at 66 ("When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations."). Given all the benefits of forum-selection clauses, and "in the light of present-day commercial realities," *The Bremen* Court concluded that a forum-selection clause "should control absent a strong showing that it should be set aside." 407 U.S. at 15. The Supreme Court's view on the importance of forum-selection clauses has not wavered since *The Bremen*—if anything, it has grown even stronger. *See Atl. Marine*, 571 U.S. at 59-60 (Section "1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional circumstances.'" (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring))).

Indeed, the presumption in favor of enforcing forum-selection clauses is particularly strong in cases involving section 1404(a), because the statute itself reflects a favorable policy toward forum-selection clauses. As originally enacted in 1948, section 1404(a) read: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Act of June 25, 1948, ch. 646, 62 Stat. 937. In *Hoffman v. Blaski*, 363 U.S. 335 (1960), the Supreme Court interpreted the phrase "where [the action] might have been brought" quite restrictively. 15 Wright & Miller's Federal Practice and Procedure § 3841 (4th ed. Sept. 2025 update). It held that section 1404(a) only permitted transfer to a court that "(1) would have been a proper venue and (2) would have had personal jurisdiction over the defendant had the case been filed there initially," regardless of whether the parties consented to a forum not satisfying those requirements. *Id.*; *Hoffman*, 363 U.S. at 343-44. But in 2011, Congress amended the statute to add that a district court may transfer to any district or division where the action might have been brought "*or to any district or division to which all parties have consented*." Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, § 202, 125 Stat. 764 (emphasis added). That new language reflects Congress's special solicitude for venues that the parties have agreed to in advance, as in a forum-selection clause. And the statute as amended is a particularly powerful indication of

Congress's favorable attitude toward forum-selection clauses, given that it permits transfer to a district selected by the parties, *even if* it is not a district where the action might otherwise "have been brought." 28 U.S.C. § 1404(a). In other words, the statute now "permits transfer even to a district that is not a proper venue and that does not have personal jurisdiction over the defendant," so long as the parties consented to litigate in that district. Wright & Miller, *supra*, § 3845.

Therefore, under governing federal law, the forum-selection clauses at issue here are presumptively enforceable. That should have been the start and end of the district court's analysis of whether to grant Defendants' motion to transfer.

## II.    The District Court Committed Clear Legal Error by Holding That the Forum-Selection Clauses Are Unenforceable.

The district court acknowledged that "[u]nder federal law, there is a 'strong presumption' in favor of enforcing mandatory forum-selection clauses." ROA.549 (quoting *Weber*, 811 F.3d at 773). But it agreed with Defense Distributed that the presumption had been overcome, on the theory that the clauses at issue contravene Texas's strong public policy as manifested in the anti-forum-selection clause and anti-waiver provisions of Chapter 143A. That was clear legal error, and therefore a clear abuse of discretion, because Texas's public policy of antipathy toward forum-selection clauses may not be considered in the enforceability analysis—and even if it could be, it cannot outweigh the powerful federal presumption in favor of enforceability.

In *The Bremen* and subsequent cases, the Supreme Court identified a narrow set of circumstances under which a forum-selection clause may be deemed "unreasonable," and therefore unenforceable, despite the strong presumption of enforceability. In particular, enforcement of a forum-selection clause may be unreasonable under the circumstances if:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Haynsworth*, 121 F.3d at 963 (quoting *The Bremen*, 407 U.S. at 18) (citing *The Bremen*, 407 U.S. at 12-13, 15; *Carnival Cruise Lines*, 499 U.S. at 595). The party resisting enforcement on any of these grounds "bears a 'heavy burden of proof.'" *Haynsworth*, 121 F.3d at 963 (quoting *The Bremen*, 407 U.S. at 17).

Defense Distributed effectively conceded that the first three potential sources of unreasonableness are inapplicable here: Defense Distributed has never argued that its agreement to the YouTube and Google Ads forum-selection clauses was the product of fraud or overreaching, that it would be deprived of its day in court in the Northern District of California, or that the law that would be applied in California court is fundamentally unfair and would deprive it of a remedy. The only point of contention is whether enforcement of the YouTube and Google Ads forum-selection

clauses would be unreasonable because it would "contravene a strong public policy of the forum state." *Haynsworth*, 121 F.3d at 963; *see The Bremen*, 407 U.S. at 15 ("A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.").

Relying on the public-policy exception as articulated in *Weber* and *Haynsworth*, which in turn relied on *The Bremen*, the district court concluded that enforcement of the forum-selection clauses would be unreasonable because it would contravene Texas's public policy against such clauses, as declared in Chapter 143A. *See* ROA.549 (quoting *Haynsworth*, 121 F.3d at 963, which quotes and cites *The Bremen*, 407 U.S. at 12-13, 15, 18); ROA.551-52 (quoting *Weber*, 811 F.3d 773, which quotes *Haynsworth*, 121 F.3d at 963). That conclusion was erroneous for three reasons: (1) Supreme Court precedent establishes that a court may not consider state public policy in determining whether a forum-selection clause is unenforceable; (2) even assuming that state public policy may factor into the enforceability analysis, that policy cannot be one of hostility toward forum-selection clauses; and (3) even if the court could consider Texas's public policy against forum-selection clauses, it failed to give proper consideration to the countervailing federal policy strongly favoring enforcement.

## A. State public policy may not be considered in the enforceability analysis.

Federal law governs the enforceability analysis. And relying on state public policy is merely an indirect way of allowing state law, rather than federal law, to govern the enforceability analysis. *See* ROA.517 (explaining that Defense Distributed's erroneous claim that "Texas state law determines the enforceability of forum-selection clauses" "pervades" all of its arguments premised on Texas public policy); *see also* ROA.265-66. In recognition of that basic proposition, the Supreme Court has made clear that *The Bremen*'s reference to unreasonableness based on "a strong public policy of the forum state" refers only to federal public policy or that of a foreign state and *not* the public policy of a State like Texas. *See Great Lakes*, 601 U.S. at 78. The district court, however, interpreted *Haynsworth*'s and *Weber*'s references to the "strong public policy of the forum state," which derive from *The Bremen*, as authorization for it to consider Texas public policy (even though *Weber* itself did not interpret that language to encompass state public policy). In doing so, the district court contravened Supreme Court precedent.

This Court has previously stated that an "underlying . . . question" in the enforceability analysis "is whether the Supreme Court in *Bremen* was referring to the state forum, federal forum, or both, when it stated a forum-selection 'clause should be held unenforceable if enforcement would contravene a strong *public policy of the forum in which suit is brought*.'" *Matthews*, 108 F.4th at 369 (quoting

*The Bremen*, 407 U.S. at 15) (emphasis in original). In *Matthews*, this Court declined to decide which forum's policy is relevant and instead "examine[d] both Louisiana and federal public policy." *Id.*; *see infra* Part I.C. But the Supreme Court recently and conclusively resolved the question of which forum *The Bremen* was referring to—and made clear that only federal public policy is relevant. *See Great Lakes*, 601 U.S. at 77-78.

In *Great Lakes*, the Supreme Court held that the enforceability of choice-of-law provisions in maritime contracts should be determined by federal law, not state law, and that, like forum-selection clauses, choice-of-law clauses enjoy a federal presumption of enforceability. *See* 601 U.S. at 71. The respondent argued that the presumption should be overcome when enforcing a choice-of-law provision "would contravene the fundamental public policy" of a State. *Id.* at 77. The Court squarely rejected that argument, explaining that state public policy is irrelevant to whether a choice-of-law provision is enforceable. *Id.* at 77-78. Part of the Court's rationale was that it has not "looked to state law in the analogous forum-selection context." *Id.* at 78. In support of looking to state public policy, the respondent had "point[ed] to [the] sentence in *The Bremen* stating that a 'contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought.'" *Id.* (quoting *The Bremen*, 407 U.S.

at 15).  The Court repudiated that reading of *The Bremen*'s exception for the "strong public policy of the forum in which suit is brought" in no uncertain terms:

> [T]hat sentence, read in context, was referring to the possibility of a conflict between federal maritime law and a foreign country's law—there, England's.  State law was not relevant to the case.  *The Bremen* said nothing about the law or public policy of Florida.  *Carnival Cruise* likewise said nothing about the law or public policy of Washington.

*Great Lakes*, 601 U.S. at 78 (citations omitted).

The Supreme Court's conclusion that the presumptive enforceability of forum-selection and choice-of-law clauses cannot be overcome on the basis of state public policy makes good sense.  After all, as the Court put it, "[a] federal presumption of enforceability would not be much of a presumption if it could be routinely swept aside based on 50 States' public policy determinations."  *Great Lakes*, 601 U.S. at 77.

The Court also explained that the respondent's argument for an exception to the presumption of enforceability based on state public policy was "essentially a repackaged version of its initial argument that the enforceability of choice-of-law provisions in maritime contracts should be determined by state law."  *Great Lakes*, 601 U.S. at 77.  In the same way, the district court's use of Texas public policy to hold unenforceable the YouTube and Google Ads forum-selection clauses was a backdoor way of using state law to determine the enforceability of those clauses.  The district court insisted that it was applying federal law, rather than state law, to

decide the enforceability of the forum-selection clauses, and that federal law merely incorporates state public policy.  *See* ROA.552-53.  But according to the Supreme Court's logic in *Great Lakes*, relying on state public policy in the enforceability analysis is just a "repackaged" way of improperly using state, rather than federal law, to determine enforceability.  601 U.S. at 77.

### B.    Even if consideration of state public policy were permissible, that policy cannot be one of hostility to forum-selection clauses.

Even assuming it were permissible for the district court to consider state public policy of some kind in the enforceability analysis, it would still be impermissible for the court to rely on state law manifesting hostility to forum-selection clauses to defeat the federal presumption in favor of enforcing such clauses.  Under the Supreme Court's decisions in *Stewart* and *The Bremen*, such a law would necessarily be preempted by federal law establishing that forum-selection clauses must be considered in the analysis and enforced in all but the most exceptional cases.

In *Stewart*, an Alabama marketing company and New Jersey-based manufacturer entered into an agreement that contained a forum-selection clause requiring any disputes be resolved in a New York court.  *See* 487 U.S. at 24.  When the marketing company sued in the Northern District of Alabama, the manufacturer moved to transfer the case to the Southern District of New York under section 1404(a).  *Id.*  The district court denied the motion, reasoning that the "transfer

motion was controlled by Alabama law and that Alabama looks unfavorably upon contractual forum-selection clauses." *Id.* The Eleventh Circuit reversed, and the Supreme Court affirmed. *Id.* at 25.

The Supreme Court explained that the district court faced a choice between either (1) applying federal law, specifically section 1404(a), and giving weight to the forum-selection clause, or (2) applying state law, specifically Alabama's categorical policy disfavoring forum-selection clauses, and therefore disregarding the forum-selection clause. *Id.* at 30. The Court held that, because federal law is supreme and preempts contrary state law, the district court should have chosen the former option and therefore should not have denied the motion on the basis of Alabama's anti-forum-selection clause law. *Id.* The dissent in *Stewart* took the contrary position that the enforceability of a forum-selection clause should be determined by state law. *See id.* at 31 n.10; *id.* at 35, 39 (Scalia, J., dissenting). The majority disagreed, explaining that the dissent's position would impermissibly "make[] the applicability of a federal statute depend on the content of state law." *Id.* at 31 n.10.

In short, *Stewart* holds that a court cannot deny a motion to transfer pursuant to a forum-selection clause simply because state law declares such clauses invalid. If a court considering a transfer motion under section 1404(a) could consider state public policy hostile to forum-selection clauses as part of the enforceability analysis, that would open up a gaping loophole to the rule the Court announced in *Stewart*.

The district court in *Stewart* could have achieved the same result by simply claiming that it was not applying Alabama law to determine the enforceability of the forum-selection clause but was merely incorporating Alabama's strong public policy against forum-selection clauses into the federal enforceability analysis. And any State could render meaningless the federal presumption of enforceability by simply passing a law that voids forum-selection clauses and declaring that such law reflects that State's strong public policy. Permitting such an end-run would effectively nullify the Court's holding in *Stewart*. And it would make the federal enforceability analysis "depend on the content of state law," in contravention of explicit language in the majority opinion. *Stewart*, 487 U.S. at 31 n.10.

Therefore, if *Stewart* is to retain any force, it necessarily must be impermissible for a district court to hold a forum-selection clause unenforceable on the basis of a state law disfavoring forum-selection clauses. It makes no difference whether the court does so by explicitly applying state law to determine the enforceability of such a clause or by sneaking that state law in through the federal enforceability analysis. *See Ameri-Fab, LLC v. Vanguard Energy Partners, LLC*, 646 F. Supp. 3d 795, 804 (W.D. Tex. 2022) (explaining that a Texas law disfavoring forum-selection clauses was no "different from the Alabama law given no weight in *Stewart*," and that denying enforcement of the forum-selection clause on the basis

of that Texas law would "require the [c]ourt to disregard the central holdings in *Stewart* and *Atlantic Marine*").

The Fourth Circuit reached the same conclusion based on the Supreme Court's decision in *The Bremen*. *See Albemarle*, 628 F.3d at 652. In *Albemarle*, the plaintiff brought suit in South Carolina even though it had entered into a contract containing a forum-selection clause requiring that disputes be litigated in the United Kingdom. *Id.* at 645-46. The plaintiff argued that the forum-selection clause was unreasonable and therefore unenforceable because it "would violate a strong public policy of South Carolina," as manifested in a South Carolina law disfavoring forum-selection clauses. *Id.* at 651.

The Fourth Circuit rejected that argument, explaining that it was contrary to the Supreme Court's decision in *The Bremen* in two ways. *First*, the Fourth Circuit explained that the Supreme Court had "specifically addressed and countered" "state reluctance to recognize and enforce forum selection clauses" in *The Bremen*. *Albemarle*, 628 F.3d at 652. As explained earlier, *The Bremen* Court disavowed the "provincial attitude" that had motivated many state courts to decline to enforce forum-selection clauses "on the ground that they were 'contrary to public policy.'" 407 U.S. at 9, 12. And the Supreme Court "held that, contrary to judicial disfavor of forum selection clauses such as that manifested in the South Carolina statute [at issue in *Albemarle*], in federal court, forum selection clauses enjoy a presumption of

enforceability." *Albemarle*, 628 F.3d at 652. *Second*, the Fourth Circuit observed that "it can hardly be a strong public policy to countermand the very policy that the Supreme Court adopted in *The Bremen*." *Id.* The court reasoned that "*The Bremen* would have little effect if [S]tates could effectively override the decision by expressing disagreement with the decision's rationale." *Id.* Accordingly, the Fourth Circuit concluded that "[c]lassifying South Carolina's statute as manifesting a strong public policy within *The Bremen*'s reasoning would allow the very 'provincial attitude' rejected by *The Bremen* to override the federal policy of favoring a contractual choice of forum." *Id.*

This Court should align itself with the Fourth Circuit's well-reasoned opinion in *Albemarle* and hold that, under *Stewart* and *The Bremen*, it was impermissible for the district court "to override the federal policy" in favor of enforcing forum-selection clauses based on Texas public policy manifesting hostility to forum-selection clauses. *Albemarle*, 628 F.3d at 652.

### C. At the very least, the district court was required to weigh federal and state public policy, and federal public policy prevails here.

Even if state public policy could be considered in the enforceability analysis, and even if that state public policy could be one embodying hostility to forum-selection clauses, the district court still legally erred by denying Defendants' motion to transfer. The district court was at the very least required to consider both state *and* federal public policy, and it failed to give proper weight to the latter. Federal

policy strongly favors the enforcement of forum-selection clauses and outweighs Texas's anti-forum-selection clause policy under this Court's precedents.

This Court's decision in *Matthews* demonstrates that even if consideration of Texas's anti-forum-selection clause policy were permissible, the federal policy requiring enforcement of forum-selection clauses in all but the most unusual cases would prevail. In *Matthews*, the plaintiff argued that a forum-selection clause in his employment contract requiring litigation in England was unenforceable because it ran "afoul of Louisiana public policy." 108 F.4th at 368. Specifically, he pointed to a Louisiana statute that declared forum-selection clauses like the one at issue in his case to be "null and void." *Id.* (quoting La. R.S. § 23:921A(2)). The Louisiana Supreme Court had declared that the statute was "an expression of strong Louisiana public policy concerning forum selection clauses." *Id.* at 369 (quoting *Sawicki v. K/S Stavanger Prince*, 802 So. 2d 598, 603 (La. 2001)).

Rather than decide whether *The Bremen*'s invocation of the "public policy of the forum state" referred to state or federal public policy, this Court examined both. *Matthews*, 108 F.4th at 369 (quoting *The Bremen*, 407 U.S. at 15). This Court recognized that the forum-selection clause in the plaintiff's employment contract "contravene[d] the strong public policy of Louisiana." *Id.* at 370. But the Court determined that the strong *federal* public policy in favor of enforcing forum-selection clauses outweighed Louisiana's admittedly strong interest against

enforcing such clauses. *See id.* The Court explained that "Louisiana public policy conflicts with and frustrates the federal public policy's presumption of validity and arguably perpetuates the uncertainties *Bremen* warns against." *Id.* And this Court was "wary of creating any inconsistency or unpredictability that federal public policy so adamantly strains to prevent." *Id.* It therefore concluded that "[e]ven if Louisiana's public policy is relevant under a *Bremen* analysis," it could "not overcome" the federal presumption of enforceability and that the plaintiff had failed to make the necessary "'strong showing' that the clause [was] unreasonable under the circumstances." *Id.* (quoting *The Bremen*, 407 U.S. at 15).

Here, despite Defendants prominently raising *Matthews* in their briefing, the district court barely considered the case, dismissing it in a footnote on the ground that "its holding was limited to the facts presented and based on federal public policy considerations in the maritime context." ROA.552 n.3. But the critical facts in *Matthews*—a mandatory and applicable forum-selection clause and a state law reflecting that State's strong public policy against forum-selection clauses—are also present here. And while *Matthews* noted that forum-selection clauses are presumptively enforceable in the maritime context, it is well-established that the presumption of enforceability extends beyond that context. *The Bremen* arose in the admiralty context, and yet, "this court and others have not hesitated to apply the[] federal enforceability standards" articulated in *The Bremen* "in non-admiralty

cases." *Haynsworth*, 121 F.3d at 962; *Stewart*, 487 U.S. at 33 (Kennedy, J.,

concurring) ("Although our opinion in [*The Bremen*] involved a Federal District

Court sitting in admiralty, its reasoning applies with much force to federal courts

sitting in diversity."); *see, e.g.*, *Stewart*, 487 U.S. at 24 (non-maritime case involving

dispute between marketer and manufacturer of copier products); *Haynsworth*, 121

F.3d at 958-61 (non-maritime case concerning an insurance-underwriting

exchange); *Weber*, 811 F.3d at 863 (non-maritime case involving compensation

dispute between technology start-up and its former CEO). If anything, the

presumptive enforceability of forum-selection clauses is *even stronger* in cases

governed by section 1404(a) than maritime cases, because section 1404(a) reflects

Congress's favorable view of transfer to a district "to which all parties have

consented" in advance, even if the suit could not have otherwise been brought in that

district.

In any event, this Court in *Matthews* in no way cabined its holding to maritime

cases. Indeed, in relying on its prior decision in *Lim v. Offshore Specialty

Fabricators, Inc.*, 404 F.3d 898 (5th Cir. 2005), the Court dismissed the plaintiff's

objection that *Lim* was inapposite because the plaintiffs in *Lim* were not Jones Act

seamen. *See Matthews*, 108 F.4th at 370. The Court explained that those distinctions

were "inapposite to [its] analysis" and "[t]he similarities are more important." *Id.*

*Lim*, like *Matthews*, shows that between federal public policy in favor of forum-selection clauses and state public policy against forum-selection clauses, federal policy comes out ahead. In *Lim*, this Court considered both Louisiana and federal public policy in considering the enforceability of an arbitration agreement and concluded that the plaintiffs failed to "meet the 'high burden of proof' necessary to show public policy renders the arbitration clause unreasonable." 404 F.3d at 906.[3] The plaintiffs had entered into employment contracts containing clauses requiring them to submit claims and disputes arising from their employment to arbitration. *Id.* at 900. The district court denied the Defendant's motion to dismiss on the basis of the arbitration clauses, concluding that the clauses were "unenforceable" because of Louisiana's "strong public policy against a forum selection clause in an employment contract." *Id.* at 901. Specifically, a provision of the Louisiana Labor and Worker's Compensation Code prohibited forum-selection clauses "in *all* employment contracts." *Id.* at 906 (emphasis in original). Rather than decide whether the relevant forum for purposes of *The Bremen*'s strong-public-policy exception to the presumption of enforceability was the United States or Louisiana, this Court "consider[ed] both United States and Louisiana public policy in [its] *M/S Bremen* reasonableness analysis." *Id.* at 905. After "weighing the[] competing policy

_____

[3] The Court noted that an "arbitration clause is a subset of a forum selection clause," so the same analysis applies to both. *Lim*, 404 F.3d at 901.

concerns," the Court concluded that "the strong federal policy in favor of . . . arbitration agreements" outweighed Louisiana's strong public policy against forum-selection clauses, including arbitration agreements. *Id.* at 906.

Under *Matthews* and *Lim*, the district court should have at the very least weighed Texas's public policy of hostility toward forum-selection clauses against the strong federal policy in favor of enforcing such clauses. And just as in *Matthews* and *Lim*, federal policy would have prevailed, given that there are no unusual circumstances here that would render the federal presumption of enforceability particularly weak or the state interest against forum-selection clauses particularly strong.

Notably, the district court did not cite a single case in which this Court actually held that enforcement of a forum-selection clause would be unreasonable on grounds of state public policy. *Cf. Noble House*, 67 F.4th at 252 (noting that the plaintiff "fail[ed] to cite a case where enforcement of a forum-selection clause contravened state public policy" and conceded at oral argument "that it was not aware of such a case"). The district court relied primarily on this Court's decisions in *Weber* and *Haynsworth*. But in *Weber*, this Court held that the plaintiff's arguments were "insufficient to overcome our strong presumption in favor of enforcement of" forum-selection clauses and that "the district court was well within the bounds of its considerable discretion in dismissing" the action based on such a clause. 811 F.3d

at 775-76.  And in *Haynsworth*, this Court held that Texas public policy as manifested in anti-waiver provisions of the Texas Securities Act and Texas Deceptive Trade Practice-Consumer Protection Act could not overcome the "presumption that the [forum-selection] clause is binding."  121 F.3d at 967; *see id.* at 969.  That the district court's decision was an outlier as measured against this Court's precedents should have been a clear indication to the court that it had gone off track.

## III.    This is Not the Exceptional Case In Which the Public-Interest Factors Can Overcome an Otherwise Enforceable Forum-Selection Clause.

Under a normal section 1404(a) analysis, the party moving for transfer must demonstrate that transfer would serve "the convenience of the parties and witnesses" and otherwise promote "the interest of justice."  28 U.S.C. § 1404(a).  To assess whether the moving party has done so, the court considers a variety of private- and public-interest factors, including deference to the plaintiff's choice of forum.  But the presence of a mandatory, applicable, and enforceable forum-selection clause "dramatically alters this analysis" in at least two ways.  *Weber*, 811 F.3d at 767; *see also Barnett v. DynCorp Int'l, LLC*, 831 F.3d 296, 300 (5th Cir. 2016).  *First*, "the plaintiff's choice of forum merits no weight."  *Atl. Marine*, 571 U.S. at 63.  That is because "when a plaintiff agrees by contract to bring suit only in a specified forum, . . . the plaintiff has effectively exercised its 'venue privilege' before a dispute arises."  *Id.*  The plaintiff therefore "bear[s] the burden of showing why the court

should not transfer the case to the forum to which the parties agreed." *Id.* at 64. *Second*, the private-interest factors—which generally focus on the convenience of the forum for the parties and witnesses—"'weigh entirely in favor of the preselected forum,' so that the 'district court may consider arguments about public-interest factors only.'" *Barnett*, 831 F.3d at 300 (quoting *Atl. Marine*, 571 U.S. at 64). The private-interest factors necessarily favor the contracted-for forum because, "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine*, 571 U.S. at 64.

As a result, "[w]hen a defendant files . . . a motion" to transfer based on an enforceable forum-selection clause, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Atl. Marine*, 571 U.S. at 52. The public-interest factors "will rarely defeat a transfer motion," so "the practical result is that forum-selection clauses should control . . . [i]n all but the most unusual cases." *Id.* at 64, 66. That result accords with the Supreme Court's "guidance that contractually selected forums often . . . become part of th[e] parties' 'settled expectations'—so if a plaintiff disregards such a contractual commitment, 'dismissal [or transfer to that forum] . . . work[s] no injustice.'" *Barnett*, 831 F.3d at 300 (quoting *Atl. Marine*, 571 U.S. at 66 & n.8).

To prevent transfer in a case like this one involving an enforceable forum-selection clause, Defense Distributed bears a heavy "burden of showing that public-interest factors *overwhelmingly* disfavor a transfer." *Atl. Marine*, 571 U.S. at 67 (emphasis added). Defense Distributed cannot satisfy that burden. This is not "one of the rare cases in which the public-interest . . . factors favor keeping a case despite the existence of . . . valid and enforceable" forum-selection clauses. *Weber*, 811 F.3d at 776.

Courts have identified four public-interest factors that, in exceptional circumstances, may justify disregarding a forum-selection clause: (1) "the familiarity of the forum with the law that will govern the case," (2) "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law," (3) "the local interest in having localized interests decided at home," and (4) "the administrative difficulties flowing from court congestion." *Volkswagen*, 545 F.3d at 315 (citation omitted).

None of those four public-interest factors weigh in Defense Distributed's favor, let alone amount to the exceptional justification necessary to override the mandatory, applicable, and enforceable forum-selection clauses that Defense Distributed agreed to.

*First*, familiarity with the relevant law "does not weigh in favor of transfer when both districts are 'equally capable of applying [that] law.'" *TikTok*, 85 F.4th

at 365 (citation omitted). There is no reason to think "that the judges of the Northern District of California would be less equipped to handle these claims" than judges in the Western District of Texas. *Id.* at 366. Chapter 143A may be a Texas law, but Defense Distributed has identified no difficult statutory-interpretation questions about Chapter 143A. Rather, the contested question will be whether enforcing Chapter 143A against these Defendants under these circumstances violates the First Amendment, and Texas judges have no special expertise in First Amendment law. In any event, "[f]ederal judges routinely apply the law of a State other than the State in which they sit." *Bruck*, 30 F.4th at 436 (quoting *Atl. Marine*, 571 U.S. at 67). And there are no "exceptionally arcane features of" Chapter 143A that "are likely to defy comprehension by a federal judge sitting in" California. *Atl. Marine*, 571 U.S. at 68; *Bruck*, 30 F.4th at 436 (concluding that there were no "exceptionally arcane features" of Texas, New Jersey, or constitutional law applicable to Defense Distributed's claims); *TikTok*, 85 F.4th at 366 (concluding that Texas law pertaining to unfair-competition and unjust-enrichment claims was not "exceptionally arcane"). Thus, there is no reason to think that federal judges in Texas would have a unique institutional advantage over federal judges in California when it comes to interpreting Chapter 143A. *See Davis v. Meta Platforms, Inc.*, No. 4:22-cv-01001, 2023 WL 4670491, at *11 (E.D. Tex. July 20, 2023) ("[A] judge sitting in the

Northern District of California is capable of applying Texas law," specifically Chapter 143A.).

*Second*, because this case turns on federal First Amendment law and a body of Supreme Court precedent that governs all jurisdictions in the United States, there is no risk of conflict-of-law issues or need for application of foreign law. *See Bruck*, 30 F.4th at 436 (finding that there was "no risk[]" of conflict of laws because the case primarily implicated federal law). Courts in this Circuit have repeatedly held that the conflict-of-laws factor does not move the needle where the legal issues in dispute are predominantly federal. *See Barton v. Young*, 144 F. Supp. 2d 685, 689 (E.D. Tex. 2001) ("[N]o conflict of laws problems will result by such a transfer because federal constitutional law will govern the dispute without regard to forum."); *Alaniz v. Liberty Life Assurance Co. of Boston*, No. 1:18-cv-297, 2018 WL 11428242, at *8 (E.D. Tex. Oct. 4, 2018) ("No conflict of laws problems will result from the proposed transfer because federal law governs the dispute."); *Huffman v. Activision Publ'g, Inc.*, No. 2:19-cv-00050, 2019 WL 12498087, at *7 (E.D. Tex. Nov. 27, 2019), *report and recommendation adopted*, 2020 WL 8269309 (E.D. Tex. Feb. 25, 2020) ("[T]he avoidance of unnecessary problems of conflict of laws" is "neutral since both districts would apply federal law.").

*Third*, this is not a quintessentially local matter focused on local interests. The case involves videos and ads that Defense Distributed would like to publish to a

national audience. The relief Defense Distributed seeks—an injunction restoring its content to YouTube and Google Ads, both national platforms—is not limited to Texas. And the core legal dispute will be over whether enforcement of Chapter 143A here would violate YouTube's and Google Ads's First Amendment right to make editorial choices about the content that they will or will not display on their platforms. *See Moody v. NetChoice, LLC*, 603 U.S. 707, 731, 734-35 (2024) (in facial challenge to the same Texas law, explaining that decisions that YouTube and similar platforms make about "the third-party speech that will be included in or excluded from" their platforms constitute "expressive activity"). Those core First Amendment issues are of national interest and have national implications. *See Davis*, 2023 WL 4670491, at \*17 (concluding that local-interest factor did not weigh against transfer to California from Texas given that the plaintiff had accused the defendant of taking actions to restrict the plaintiff's "First Amendment rights"). Moreover, Defendants are all headquartered in the Northern District of California, and a "judicial district has a 'strong local interest' in cases involving a corporate party headquartered in that district." *Id.* (citation omitted).

Defense Distributed has previously asserted that its lawsuit is quintessentially local because Texas has a particular interest in protecting a Texas plaintiff from "censorship." ROA.410. But "[t]he interests of . . . the [S]tates individually in protecting their own citizens are implicated in *every* case in which a U.S. citizen

attempts to resist enforcement of a[] [forum-selection clause]." *Weber*, 811 F.3d at 776 (emphasis in original). If that interest were sufficient to overcome a forum-selection clause, it "would nullify the Supreme Court's clear directive to reserve, for truly exceptional cases, the step of disregarding the parties' agreement that a case should be litigated elsewhere." *Id.*

*Fourth*, the Northern District of California is perfectly capable of adjudicating cases promptly, especially those like this one that largely turn on pure issues of law, require little fact development, and are likely to be resolved on the basis of dispositive motions. Given that the Northern District of California is equipped with 25 district-court judges and 13 magistrate judges, it is implausible that the addition of this case to the District's docket would generate administrative difficulties or court congestion. *See* Judges, United States District Court Northern District of California, https://perma.cc/2AME-8XEX. Moreover, Defense Distributed's "assertions that [its] case needs to be decided quickly should not affect the weight of this factor." *In re Chamber of Com. of U.S.*, 105 F.4th 297, 310 (5th Cir. 2024). Defense Distributed's individual interest in the fastest possible resolution of the case is a *private* interest, not a public one.

In sum, this case does not present the rare constellation of circumstances that might warrant disregarding a mandatory, applicable, and enforceable forum-selection clause on the basis of the public interest. Rather, the "interest of justice"

warrants transferring this case to California, the place that the parties agreed in advance would be the exclusive forum for precisely this kind of dispute. 28 U.S.C. § 1404(a); *Atl. Marine*, 571 U.S. at 66 ("'[T]he interest of justice' is served by holding parties to their bargain.").

## **CONCLUSION**

For the foregoing reasons, this Court should reverse the district court's order denying Defendants' motion to transfer. Alternatively, this Court should treat this filing as a petition for mandamus and order the district court to transfer the case to the Northern District of California.

Dated: January 16, 2026

Respectfully submitted,

*/s/ Jonathan Patchen*
Jonathan Patchen
Michael A. Rome
Anika Holland
Madeleine R. Ahlers
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
(415) 693-2000
jpatchen@cooley.com

Connie L. Wang
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000

Steven J. Wingard
Robyn Hargrove

Eli Barrish
Scott Douglass & McConnico LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
(512) 495-6300

*Counsel for Defendants-Appellants
YouTube LLC, Google LLC, and
Alphabet, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Jonathan Patchen*
Jonathan Patchen

# CERTIFICATE OF COMPLIANCE

I certify that:

1.      This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it consists of 11,875 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced, serif typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Jonathan Patchen*
Jonathan Patchen